## Plank et al. v. Indiana Mutual Building and Loan Association.

[No. 3,915.   Filed January 28, 1902.]

Building and Loan Associations.—*Maturity of Stock.*—*Mortgages.*—Where a certificate of stock in a building and loan association on which a shareholder procured a loan provided that the stock should mature at $100 per share "as soon as the accumulations in the loan fund shall equal $100 per share, but in no case shall the shareholder be required to make more than seventy-two monthly payments," and the loan by the terms of the note and mortgage was made payable in seventy-one months, the borrower is entitled to discontinue paying dues after seventy-two months and have the earnings applied to the maturity of the stock, but must continue the payment of interest and premium until the loan is paid; and if the accumulations in the loan fund do not equal $100 per share he is not entitled to have the stock applied on the loan at the par value of $100 per share.   *pp. 259–264.*

New Trial.—*Assignments.*—*Exceptions.*—An assignment in a motion for a new trial was properly ignored in the ruling on the motion, where the assignment embraced questions and answers to which there were no objections on the trial.   *p. 264.*

Evidence.—*Building and Loan Associations.*—In an action by a building and loan association to foreclose a mortgage it was not error to permit the association's bookkeeper to testify as to the balance due on the loan as shown by the books of the association.   *pp. 264, 265.*

From Huntington Circuit Court;   *C. W. Watkins,* Judge.

Action by the Indiana Mutual Building and Loan Association against Mary B. Plank and husband to foreclose a mortgage.   From a judgment for plaintiff, defendants appeal.   *Affirmed.*

*G. W. Holman, R. C. Stephenson, J. B. Kenner* and *U. S. Lesh,* for appellants.

*J. M. Hatfield, R. W. McBride* and *C. S. Denny,* for appellee.

Black, J.—The complaint of the appellee against the appellants, Mary B. Plank and her husband, filed in the Fulton Circuit Court March 27, 1897, showed that the appel-

lant Mary, having become a member of the appellee associa-tion, and owner of eleven shares of its stock, of the par value of $100 each, procured from it a loan of $900; whereupon the appellants executed their promissory note to the appel-lee, as follows: "No. 103.     First Mortgage Note.     $900. Non-negotiable. Indianapolis, Ind. April 1, 1891. Seventy-one months after date, for value received, I promise to pay to the Indiana Mutual Building and Loan Association, a corporation duly organized under the laws of the State of Indiana, the sum of $900, and reasonable attorney's fees, with five per cent. interest per annum and five per cent. premium per annum thereon, from date until paid, payable monthly on or before the last Saturday of each month. Principal, interest, and premium payable at the office of the Indiana Mutual Building and Loan Association, at Indianapolis, Ind.; all without relief from valuation and ap-praisement laws.     Any failure to pay interest or premium when due shall make principal, interest, and premium at once due, and any waiver of such right shall not prevent the payee from enforcing the right upon any recurrence of the default.     The shares of stock in the Indiana Mutual Build-ing and Loan Association held by the undersigned, as shown by the certificate of stock No. 1,474, are hereby transferred and pledged to the Indiana Mutual Building and Loan Asso-ciation as collateral security for the performance of the con-ditions of this obligation and of the mortgage securing the same.     Mary B. Plank.     Charles K. Plank."     It was fur-ther stated, that at the execution of this note the appellant Mary assigned, pledged, and delivered the certificate and shares of stock to the appellee as security for the payment of the loan, which certificate continued to be held in pledge by the appellee as such security.     It was alleged, that at the execution of the note and the assignment of the certificate, the appellants executed their mortgage on certain real estate, part of a lot in the town of Rochester, Fulton county, which was then, and still continued to be, the property of

the appellant Mary, to further secure the payment of the note, which mortgage was recorded, etc. A copy of the mortgage was exhibited. By the terms thereof, the appellants mortgaged and warranted the real estate to the appellee, to secure the payment, when it should become due, of the described promissory note; and the mortgagors expressly agreed to pay the sum secured, etc. It was further alleged in the complaint, that the principal of the note was past due, and remained wholly unpaid; that the shares of stock held by the appellant Mary were worth $771.76, and no more, and had a withdrawal value of that amount; and the appellee, in its complaint, offered to credit the $900 due on the note with this sum of $771.76, and sought recovery of the balance on the note, with $200 for an attorney's fee; and that upon the allowance of such credit the certificate of stock be canceled. It was also alleged that the loan was made to the appellant Mary for her own use and benefit, and that she used the money borrowed in improving her said real estate. The appellee demanded judgment for $500 on the note against the appellants, the cancelation of the certificate of stock, and the foreclosure of the mortgage, etc.

This complaint having been held insufficient on demurrer by the Fulton Circuit Court, its judgment was reversed on appeal to the Supreme Court. *Indiana Mutual Building and Loan Association* v. *Plank*, 152 Ind. 197. In April, 1899, the venue was changed to the court below, where issues were formed, which were tried by the court, and a special finding was rendered. A motion for a new trial having been overruled, the court rendered judgment, in accordance with the conclusion of law stated on the facts specially found.

The court found, amongst other pertinent matters, that the appellant Mary paid eighty cents per month as dues on each share of stock for seventy-two months, including March, 1891, when the certificate was issued, up to and including February, 1897, making $663.60 so paid on the

pledged stock, and no more; also, that she paid her regular monthly instalments of interest and premium on the note, at the aggregate rate of ten per cent. per annum, from and including April, 1891, to and including February, 1897, making a total thus paid of $532.50, and no more, one-half of this sum being paid as interest and one-half as premium; also, that in March, 1897, the appellants notified the appellee that neither of them would make any further payments of dues on shares of stock or of interest or premium on the note, claiming that the stock had matured, and that the note and mortgage had been fully paid off. It was found, also, that they had not made any further payments of dues, interest, or premium; that the certificate of stock issued to the appellant Mary, by its terms provided that the eleven shares of stock should mature at the face value of $100 for each share, "as soon as the accumulations in the loan fund shall equal $100 per share, but in no case shall the shareholder be required to make more than seventy-two monthly payments on said shares." It was also found, that at the commencement of the action the eleven shares had not matured, being worth less than $800; that the profits since earned by the stock and credited thereto had brought its value to $948.80; that the delinquent interest on the note for the thirty-four months since the payments ceased and the delinquent premium for the same time amounted to $255; that a reasonable attorney's fee was $85; that the total indebtedness of the appellant Mary to the appellee was $1,240, but on this she was entitled to a credit of $948.80, the present value of her stock, leaving due a balance of $291.20; and for this sum, which included the attorney's fees, judgment was rendered, the mortgage being foreclosed, and the certificate of stock being canceled.

The controlling question in the case, variously brought forward in the record, relates to the proper application of the provision above quoted from the certificate of stock. By the plain terms of the note and mortgage, the loan was pay-

able seventy-one months after their date. The note was secured by the mortgage and also by eleven shares of stock, and the appellee was entitled, not merely to subject the real estate, so far as necessary, to the payment of its judgment on the note, but to have the pledged stock applied to the satisfaction of the judgment. The claim of the appellants that the stock should be applied upon the loan at the par value of $100 for each share is contrary to the terms of the contract, construed according to the literal and ordinary meaning of the language and with a regard to a reasonable view of the transaction. By those terms the stock was to mature at $100 per share, "as soon as the accumulations in the loan fund shall equal $100 per share", and the monthly dues upon the shares of stock were to be payable for seventy-two months, and no longer. After paying dues for such period, the shareholder would be entitled to continue to have the proper portion of the earnings of the stock applied upon her shares, without further payment of dues thereon; but if the loan note were not then paid, the stipulated interest and premium would continue to be payable. The borrower might have paid off the loan when due, and might have left her stock to accumulate to its par value, without further payment of dues; but she having chosen to refuse to pay the loan, or to further pay interest or premium thereon, the appellee exercised its right to seek enforcement of payment of the loan by obtaining judgment on the note, and subjecting to its payment the securities, including the application of the stock at its value.

The decisions in *Lime City, etc., Assn.* v. *Wagner*, 122 Ind. 78, 17 Am. St. 342, and *International, etc., Assn.* v. *Bratton*, 24 Ind. App. 654, to which counsel for the appellants refer, are not contradictory of our conclusion in the case at bar, the language construed in those cases being of plainly different meaning from that here involved. Nor is there anything in *Hartman* v. *International, etc., Assn.*, *ante*, 65, adverse to our determination in the case now be-

fore us, in which no question of fraud is presented, while the decision now rendered is in harmony with *Union Mutual, etc., Assn.* v. *Aichele, ante,* 69, and *Wayne, etc., Assn.* v. *Skelton,* 27 Ind. App. 624.

In the motion for a new trial, one of the grounds assigned related to certain testimony as a whole, embracing a number of questions and answers as to some of which there was no objection on the trial. There could be no error in ignoring such an assignment in ruling upon the motion.

One of the appellee's bookkeepers, who had served as such for nearly seven years, and was familiar by examination with the account between the appellee and the appellant Mary relating to her eleven shares of stock, and the payments made by her from time to time on her loan involved in the suit, and who was permitted without objection to refresh his memory from certain papers, in the course of his examination as a witness for the appellee, having testified that a certain pass-book represented the correct and accurate payments, and the dates thereof, made by the appellant Mary, as to the stock and the interest and premium upon her loan, and having also testified as to the amount of the then present value of the stock, after adding to it the accretions by way of earnings of the stock, was asked and permitted to state the aggregate amount due and unpaid upon the note after giving credit for the full present withdrawal value of the eleven shares of stock. The only objection to this question which was stated to the court at the trial, and in the motion for a new trial, and also repeated in argument here, was that it was a matter for the court to determine, and not the witness. The witness was afterward asked on behalf of the appellee to tell the method of arriving at the amount which he had so stated, but the appellants objected to his doing so, on the ground that this was in the nature of a cross-examination, which objection of the appellants was sustained.

We can not conclude that there was available error in the

·court's ruling. It was not improper to show the state of the account upon the books of the association, the appellants reserving and being given permission, of which they availed themselves, to cross-examine the witness upon this matter. If the answer involved merely a process of subtraction of one sum from another, though the court could have done this, it was not a material injury to the appellants to have the matter shown in the record by way of an answer of the witness.

There is no available error in the record. Judgment affirmed.